IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| OSCAR THOMPSON, : | |
| : | |
| Plaintiff, : | |
| : | |
| v. : | CIVIL ACTION NO. |
| : | 1:10-CV-1902-RWS |
| CITY OF MONROE, GEORGIA, : | |
| *et al.*, : | |
| : | |
| Defendants. : | |

**ORDER**

This case comes before the Court on Defendants' Motion for Summary Judgment [27]. After considering the record, the Court enters the following order.

**Background**

The following facts are undisputed unless otherwise indicated. On June 27, 2008, Plaintiff Oscar Thompson was arrested and charged with disorderly conduct. (Dkt. 29 at ¶ 1). Defendants Charles Banks, John Mura, and Benjamin Goga ("Defendants") were all City of Monroe police officers during the time in question and participated in Plaintiff's arrest, which took place outside of his home at 634 Marable Street, Monroe, Walton County, Georgia. (Dkt. 29 at ¶ 2;

Dkt. 27-2 at ¶ 2). Defendant Marvin K. Glass was the Police Chief for the City of Monroe at the time and did not personally take part in the arrest. (Dkt. 27-2 at ¶ 3). Plaintiff was arrested at his home after he failed to cooperate with City of Monroe police officers who were attempting to serve a Walton County arrest warrant on Plaintiff's son. (Dkt. 27-2 at ¶ 4). However, Defendants did not posses a warrant in hand for Plaintiff's son and went to Plaintiff's residence only after receiving a phone call from the 911 dispatcher that a child support warrant existed for Plaintiff's son. (Dkt. 8 at ¶ 20; Dkt. 29 at ¶ 4).

Defendants Banks and Goga arrived at the premises first and they spoke to Plaintiff's wife at the front door, telling her why they were there. (Dkt. 29 at ¶ 5). Plaintiff's wife gave them permission to enter the premises; however, Plaintiff contends that she never gave them permission to search the premises. (Dkt. 29 at ¶ 5). Plaintiff was not present in the house when his wife gave the officers permission to enter. (Dkt. 27-2 at ¶ 8). Defendant Banks and Goga searched the premises for Plaintiff's son. (Id. at ¶ 5). Defendant Mura, a corporal and supervisor of the other officer, arrived sometime after Defendant Banks and Goga had gone into the house. (Dkt. 29 at ¶ 6). Defendant Mura walked to the back of the premises, where he encountered Plaintiff. (Id. at ¶ 7). Both Plaintiff and Defendant Mura left the rear of the home and went to a side

2

door, where Defendants Bank and Goga were emerging from the house. (Dkt. 27-2 at ¶ 9).

Plaintiff asked the officers what they were doing there. (Id., ¶ 10). The officers told Plaintiff that they were attempting to serve an arrest warrant and asked him for his name. (Id.). Plaintiff refused to comply with this request. (Id., ¶ 11). Although the officers asked him to identify himself on several occasions, Plaintiff did not do so. (Id.). Plaintiff attempted to walk past the Defendants into his home, and Defendant Banks blocked his path and again asked Plaintiff to identify himself. (Id. at ¶ 12). When Plaintiff refused to provide his name, Defendant Banks placed Plaintiff under arrest for Disorderly Conduct under Local Ordinance 62-1[1] and handcuffed him. (Id. at ¶ 13).

There was no violence and Plaintiff received no injuries during the arrest, although he testified at his deposition that the handcuffs were on too tight and he has some occasional numbness in one hand. (Id. at ¶¶ 15, 17). Moreover, according the Plaintiff's deposition, Defendant Mura threatened to taser Plaintiff. (Dkt. 29 at ¶ 15). Plaintiff was placed in a police vehicle and

---

[1]Monroe City Ordinance Sec. 62-1(a)(9). - Disorderly conduct; It shall be unlawful for any person within the corporate limits of the city to: willfully obstruct, hinder, or oppose an employee of the State of Georgia or any political subdivision thereof, including but not limited to the City of Monroe, in the lawful discharge of their official duties.

3

transported to the Walton County Jail. (Dkt. 27-2 at ¶ 15). Plaintiff was released from jail with a citation for Misdemeanor Disorderly Conduct, which was eventually dismissed (Id. at ¶¶ 16, 18).

Plaintiff filed his Complaint [1] on June 21, 2010, alleging claims under 42 U.S.C. § 1983 and various state law claims. Defendants filed a Motion for Summary Judgment [27] on April 5, 2011. Plaintiff filed his Response in Opposition [28] to Defendants' Motion for Summary Judgment on April 26, 2011.

## Discussion

A.   Legal Standard

Defendants have moved for summary judgment on all counts. Federal Rule of Civil Procedure 56 requires that summary judgment be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). "The moving party bears 'the initial responsibility of informing the . . . court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact.'" Hickson Corp. v. N. Crossarm Co., 357 F.3d 1256, 1259 (11th Cir.

4

2004) (quoting Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (internal quotations omitted)).  Where the moving party makes such a showing, the burden shifts to the non-movant, who must go beyond the pleadings and present affirmative evidence to show that a genuine issue of material fact does exist. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 257 (1986).

The applicable substantive law identifies which facts are material.  Id. at 248.  A fact is not material if a dispute over that fact will not affect the outcome of the suit under the governing law.  Id.  An issue is genuine when the evidence is such that a reasonable jury could return a verdict for the non-moving party. Id. at 249-50.

In resolving a motion for summary judgment, the court must view all evidence and draw all reasonable inferences in the light most favorable to the non-moving party.  Patton v. Triad Guar. Ins. Corp., 277 F.3d 1294, 1296 (11th Cir. 2002).  But, the court is bound only to draw those inferences which are reasonable.  "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." Allen v. Tyson Foods, Inc., 121 F.3d 642, 646 (11th Cir. 1997) (quoting Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986)). "If the evidence is merely colorable, or is not significantly probative, summary

judgment may be granted." Anderson, 477 U.S. at 249-50 (internal citations omitted); see also Matsushita, 475 U.S. at 586 (once the moving party has met its burden under Rule 56(c), the nonmoving party "must do more than simply show there is some metaphysical doubt as to the material facts").

### B.     Abandoned Claims

As a preliminary matter, Plaintiff has abandoned some of his claims. See L.R. 7.1(B), NDGa ("Failure to file a response shall indicate that there is no opposition to the motion."). First, Defendants moved for summary judgment on all of Plaintiff's state law claims on the ground that official immunity applies to all individual liability claims.[2]  See Cameron v. Lang, 274 Ga. 122, 549 S.E.2d 341, 344 (2001) (The doctrine of official immunity offers public officers and employees limited protection from suit in their personal capacity.). Here, Plaintiff fails to address official immunity in his Response [28-1]. As such, Plaintiff has abandoned all of his state law claims, and Defendants are entitled to official immunity. Second, Plaintiff has abandoned any claims for excessive force in violation of the Fourth Amendment by failing to respond to the arguments in Defendants' Motion [27]. Therefore, the Court **GRANTS**

---

[2]The Court reads Defendants' motion as intending to apply official immunity to all of Plaintiff's state law claims against the individually named Defendants.

6

summary judgment on all state law claims and Plaintiff's Fourth Amendment excessive force claim.

### C. Plaintiff's 42 U.S.C. § 1983 Claims

A plaintiff has a cause of action against any person who, under color of law, deprives that plaintiff of any rights, privileges, or immunities secured by the Constitution and laws of the United States. 42 U.S.C. § 1983. "In order to prevail in a civil rights action under § 1983, 'a plaintiff must make a prima facie showing of two elements: (1) that the act or omission deprived plaintiff of a right, privilege or immunity secured by the Constitution or laws of the United States, and (2) that the act or omission was done by a person acting under color of law.' " Marshall County Bd. of Educ. v. Marshall County Gas Dist., 992 F.2d 1171, 1174 (11th Cir. 1993) (quoting Bannum, Inc. v. City of Ft. Lauderdale, 901 F.2d 989, 996-97 (11th Cir. 1990)). Defendants to not contest that they were acting under color of state law when they searched the premises and arrested the Plaintiff. See Dkt. 27-1 at 8-12. Therefore, the key issue is whether Plaintiff suffered the deprivation of a constitutional right.

### I. Warrantless Search

Plaintiff alleges that his Fourth and Fourteenth Amendment rights were violated because Defendants came onto his property without a search warrant,

7

AO 72A
(Rev.8/82)

consent, or exigent circumstances. Because "the physical entry of the home is the chief evil against which the wording of the Fourth Amendment is directed," it is "a basic principle of Fourth Amendment law that searches and seizures inside a home without a warrant are presumptively unreasonable." Payton v. New York, 445 U.S. 573, 585–86 (1980) (quotation marks and citations omitted). The presumption is rebutted, and the arrest lawful, only when some exception to the warrant requirement–such as consent or exigent circumstances–exists. See Kirk v. Louisiana, 536 U.S. 635, 635 (2002); Bashir v. Rockdale Cnty., 445 F.3d 1323, 1327–28 (11th Cir. 2006); United States v. McGough, 412 F.3d 1232, 1236–37 (11th Cir. 2005).

Because the arrest warrant's target did not live at Plaintiff's home, Plaintiff argues that it was improper for the Defendants to enter his residence to effectuate his son's arrest without a search warrant, consent, or exigent circumstances. There are two distinct Fourth Amendment interests implicated by the entry of law enforcement officers into a third-party's residence for the purpose of executing an arrest warrant. Steagald v. United States, 451 U.S. 204, 204 (1981). First, the individual named in the arrest warrant has an "interest in being free from an unreasonable seizure." Id. Second, the third-party homeowner has an "interest in being free from an unreasonable search of

8

his home." Id.  "Absent exigent circumstances, law enforcement officers may not enter the home of a third party to search for the subject of an arrest warrant without first securing a *search warrant* for that home." Bates v. Harvey, 518 F.3d 1233, 1245 (11th Cir. 2008) (emphasis added).  An arrest warrant alone is insufficient because "[a]rmed solely with an arrest warrant for a single person, the police could search all the homes of that individual's friends and acquaintances." Steagald, 451 U.S. at 215.  "A contrary conclusion ... would create a significant potential for abuse."  Id.  Because Defendants did not have a search warrant permitting them to enter and subsequently search Plaintiff's home, consent or exigent circumstances are the only routes to a lawful search. Id. at 214.

Plaintiff asserts, and Defendants do not contradict that no exigent circumstances existed to justify a warrantless search of Plaintiff's home.  What is in dispute, however, is whether Plaintiff's spouse, Mrs. Thompkins, gave consent to her home being searched.  Defendants argue that Plaintiff's spouse consented to the search of Plaintiff's home.  On the other hand, according to Mrs. Thompkins, the officers asked if they could come in, and she allowed them to come inside, being courteous.  However, Mrs. Thompkins asserts that the

9

officers never asked if they could search the property and she never gave them permission to do so.

For a warrantless search to be constitutionally valid on the basis of consent, that consent must be given voluntarily by an individual possessing "common authority" over the premises. Consent is voluntary when it is " 'the product of an essentially free and unconstrained choice.' " United States v. Gonzalez, 71 F.3d 819, 829 (11th Cir. 1996) (quoting United States v. Garcia, 890 F.2d 355, 360 (11th Cir. 1989)). The Eleventh Circuit has found that meaningful consent cannot be derived from the mere failure to object to a search, and that "whatever relevance the implied consent doctrine may have in other contexts, it is inappropriate to 'sanction [ ] entry into the home based upon inferred consent.' " Id. at 830 (quoting United States v. Shaibu, 920 F.2d 1423, 1426 (9th Cir. 1990)).

The parties dispute whether Mrs. Thompkins consented to the search. In construing the facts most favorable to the non-moving party, there is a genuine issue of material fact as to whether consent for the search was given; thus, summary judgment is precluded. As well, Defendants make a valid argument that Plaintiff's subsequent arrest was predicated by probable cause and was made pursuant to Plaintiff's deliberate violation of Monroe City Ordinance 62-

10

1, but because Plaintiff asserts sufficient facts indicating that Defendants' initial warrantless entry and search of Plaintiff's home was presumptively unreasonable and not justified, Plaintiff's subsequent seizure and arrest which flows from the unlawful search were also unlawful, in violation of his constitutional rights under the Fourth and Fourteenth Amendments.  See Bates v. Harvey, 518 F.3d 1233, 1249 (11th Cir. 2008) (holding that the initial warrantless entry and search of home was presumptively unreasonable and not justified by either consent or exigent circumstances, and thus, the subsequent seizure and arrest was unlawful, in violation of constitutional rights).

### II.     Qualified Immunity

As to the claims against Defendants Banks, Mura, and Goga in their individual capacities, Defendants have moved for summary judgment on the basis of qualified immunity.  Qualified immunity protects government officials performing discretionary functions from being sued in their individual capacities.  See Wilson v. Layne, 526 U.S. 603, 609 (1999).  In addressing a qualified immunity defense, a two part analysis is used.  First, a Defendant must prove that he was "acting within the scope of his discretionary authority" when the allegedly wrongful acts occurred.  Second, if Defendant provides such proof, the burden shifts to Plaintiff to show that Defendant's actions violated

11

"clearly established constitutional law" of which a reasonable person would have known. Hudgins v. City of Ashburn, Ga., 890 F.2d 396, 404 (11th Cir. 1989); Garrett v. Athens-Clarke County, 378 F.3d 1274, 1278-9 (11th Cir. 2004).

If the law has not staked out a bright line "right" in factual circumstances highly similar to those presented, qualified immunity almost always protects the defendant. To defeat summary judgment on qualified immunity because of a dispute of material fact, Plaintiff must produce evidence that would allow a fact-finder to find that no reasonable person in the defendant's position could have thought the facts were such that they justified defendant's acts. Post v. City of Fort Lauderdale, 7 F.3d 1552, 1557 (11th Cir. 1993). The Court determines the legal issue of whether the defendant was entitled to qualified immunity using the version of facts most favorable to the plaintiff. Durruthy v. Pastor, 351 F.3d 1080, 1084 (11th Cir. 2003).

Here, the first prong is satisfied as the parties do not dispute that Defendants were acting within the scope of their discretionary authority as Monroe Police Officers. Accordingly, for summary judgment purposes, the critical question is whether Plaintiff has provided competent evidence that

Defendants' actions violated clearly established constitutional standards of which a reasonable person would have known.

As seen supra, Plaintiff has established that there is a genuine issue of material fact as to whether a reasonable person in Defendants' position would have thought they had consent to enter and subsequently search Plaintiff's residence. If Plaintiff's version of the facts is deemed true, the Defendants have violated a clearly established constitutional right by entering a third-party residence without consent or exigent circumstances. See supra. Consequently, Defendants are not entitled to summary judgment on the grounds of qualified immunity.

### III.     Monell Liability

Local governments may not be held liable pursuant to section 1983 on a theory of *respondeat superior*. Monell v. Dep't of Social Servs., 436 U.S. 658, 691 (1978). Instead, local governments may be liable "when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury." Id. at 694; see also Mandel v. Doe, 888 F.2d 783, 791 (11th Cir. 1998). "Local governing bodies (and local officials sued in their official capacities) can, therefore, be sued directly under § 1983 for monetary, declaratory, and

13

injunctive relief in those situations where the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted or promulgated by those whose edicts or acts may fairly be said to represent official policy." Monell, 436 U.S. at 659, 98 S. Ct. at 2019, 56 L. Ed. 2d 611.

In addition, inadequate training may constitute a policy supporting government liability. Rivas v. Freeman, 940 F.2d 1491, 1495 (11th Cir. 1991). To maintain a claim based on a failure to train adequately, evidence must be proffered showing deliberate indifference to a constitutional deprivation that may result from the failure to provide adequate training. City of Canton v. Harris, 489 U.S. 378, 388 (1978). Deliberate indifference is established if a plaintiff shows a "strong likelihood, rather than a mere possibility" that the constitutional violation suffered proceeded from the defendants' failure to train. Tittle v. Jefferson County Comm'n, 10 F.3d 1535, 1540 (11th Cir. 1994) (quotations omitted).

The Court concludes that liability cannot be imputed upon Defendant City of Monroe or Defendant Marvin K. Glass. First, Plaintiff's claims are expressly predicated on a theory of respondeat superior. But, it is well-established that "supervisory officials are not liable under § 1983 for the

14

unconstitutional acts of their subordinates on the basis of respondeat superior or vicarious liability." Miller v. King, 384 F.3d 1248, 1261 (11th Cir. 2004). Thus, to the extent that Plaintiff seeks to recover on that theory against Defendant City of Monroe or Defendant Glass, his claim fails as a matter of law.

Second, even assuming that Plaintiff's Complaint could be read to more generally allege supervisory liability under § 1983, that claim similarly must be dismissed. Insofar as Plaintiff's claims are predicated upon a theory of supervisory liability, it is well-established in this Circuit that supervisory liability under § 1983 occurs only when "the supervisor personally participates in the alleged unconstitutional conduct or when there is a causal connection between the actions of a supervising official and the alleged constitutional deprivation." Cottone v. Jenne, 326 F.3d 1352, 1360 (11th Cir. 2003). Because Plaintiff fails to allege either of these Defendants somehow participated in Plaintiff's arrest, or that there was a causal connection between these Defendants' actions and Plaintiff's arrest, he cannot recover against the City of Monroe under § 1983.

More specifically, insofar as Plaintiff has alleged Monell liability against Defendant City of Monroe or Defendant Glass on the grounds that it is common

15

practice for the officers to effectuate "a warrant" without actual possession, the Court finds that such practice in this case cannot establish liability. As to *search warrants*, the Supreme Court has explicitly recognized that "neither the Fourth Amendment nor Rule 41 of the Federal Rules of Criminal Procedure requires the executing officer to serve the warrant on the owner before commencing the search." Groh v. Ramirez, 540 U.S. 551, 562 n. 5, 124 S.Ct. 1284, 157 L.Ed.2d 1068 (2004). Thus, an officer is not required to have a search warrant in hand when conducting the search. See United States v. Armstrong, 406 F. App'x 500, 501 (2d Cir. 2010). Similarly, as to *arrest warrants*, there is no federal requirement that an officer have a warrant in hand or nearby when he is arresting a suspect. United States v. Bembry, 321 F. App'x 892, 894 (11th Cir. 2009). Instead, when an officer is arresting a suspect, pursuant to a warrant, and "the officer does not possess the warrant, the officer must inform the defendant of the warrant's existence and of the offense charged and, at the defendant's request, must show the warrant to the defendant as soon as possible." FED. R. CRIM. P. 4(c)(3)(A).

In sum, Plaintiff's grounds for Monell liability against Defendant City of Monroe and Defendant Glass for adopting customs, policies, or procedures that deprived Plaintiff of his constitutional rights are conclusory and are not

16

supported by sufficient facts in the record; accordingly, the Court is not persuaded that there is a question of material fact for the jury.  Moreover, Plaintiff has failed to raise a genuine issue of material fact as to whether the failure to provide adequate training resulted in a constitutional deprivation. Therefore, there is insufficient evidentiary and factual support in the record to indicate that Defendant City of Monroe or its officers' actions were taken pursuant to a municipal policy that was in violation of the law or the constitution.  Accordingly, Defendant City of Monroe and Defendant Glass, are entitled to summary judgment.

## Conclusion

For the aforementioned reasons, the Defendants' Motion for Summary Judgment [27] is **GRANTED in part and DENIED in part**. As to Plaintiff's state law claims and any claims for excessive force in violation of the Fourth Amendment, Defendants' Motion [27] is **GRANTED**. As to Plaintiff's claims under 42 U.S.C. § 1983 for conducting a warrantless search, the Court finds that there are genuine issues of material fact, and consequently, Defendants' Motion [27] is **DENIED**.  As to Plaintiff's  § 1983 claim predicated on a theory Monell liability or respondeat superior, Defendants' Motion [27] is **GRANTED**.

17

Accordingly, Defendants City of Monroe and Glass are dismissed from this action. The remaining parties are **DIRECTED** to file a joint proposed pre-trial order within thirty (30) days of the date of entry of this Order.

**SO ORDERED**, this   18th   day of October, 2011.

_____
RICHARD W. STORY
UNITED STATES DISTRICT JUDGE

AO 72A
(Rev.8/82)